﻿Citation Nr: AXXXXXXXX
Decision Date: 03/18/19 Archive Date: 03/18/19

DOCKET NO. 181011-673
DATE: March 18, 2019

ORDER

Service connection for sleep apnea is denied.

FINDING OF FACT

The preponderance of the evidence is against finding that the Veteran’s current sleep apnea began during active service, is otherwise related to an in-service injury or disease, or to a service-connected disability.

CONCLUSION OF LAW

The criteria for service connection for sleep apnea have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty form November 1993 to August 1997 in the Marine Corps and from May 2009 to April 2010 in the Navy. Then he enlisted in the Navy Reserves where he served on active duty from May 2009 to April 2010. 

VA received the Veteran’s claim for service connection for sleep apnea December 2015. The Agency of Original Jurisdiction (AOJ) issued a July 2016 rating decision denied that issue. The Veteran elected into RAMP and selected Higher-Level Review via a signed form received by VA on March 22, 2018. Thereafter, an August 2018 RAMP decision denied service connection for sleep apnea. In October 2018, the Veteran sought further review, elected to appeal to the Board, and selected the evidence submission lane. The Veteran included a handwritten statement that he was appealing the denial of sleep apnea. The Board finds this statement shows the Veteran’s intent only to appeal this issue.

Entitlement to service connection for sleep apnea.

Legal Criteria

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 C.F.R. § 3.303(a). Service connection generally requires credible and competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009).

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third elements above is through a demonstration of continuity of symptomatology. However, this method may be used only for the chronic diseases listed in 38 C.F.R. § 3.309. Walker v. Shinseki, 708 F.3d 1331, 1336-38 (Fed. Cir. 2013).

Regulations provide that service connection is warranted for a disability which is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Further, a disability which is aggravated by a service-connected disorder may be service connected to the degree that the aggravation is shown. Allen v. Brown, 7 Vet. App. 439, 449 (1995); 38 C.F.R. § 3.310(b). 

In order to establish entitlement to secondary service connection, there must be 

(1) evidence of a current disability; (2) evidence of a service-connected disability; (3) medical evidence establishing a nexus between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).The 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-54 (1990).

Analysis

The Veteran contends that his sleep apnea is related to his active duty military service. He states that he was seen in Kuwait in December 2009 for anxiety and sleep issues and has been on sleep medication since 2010. He states that he was always tired and sleepy, but thought it was over medication until he was tested for sleep apnea. He notes that he has had weight gain due to his anxiety and depression.

The AOJ found that the Veteran has a current diagnosis of sleep apnea per 

VA treatment records dated in February 2016. Therefore, the first element of a service connection claim, a current diagnosis, has been met. Next, the Board will look at the relevant evidence regarding the second service connection element.

For his first period of active duty in the Marines Corps, the Veteran’s November 1993 entrance examination and Report of Medical History both show no abnormalities related to a sleep disorder. During service there were no complaints, treatment or a diagnosis related to sleep apnea. At discharge, his May 1997 separation examination and the accompanying Report of Medical History were both again silent for sleep disorders. The medical history form indicates that the Veteran denied frequent trouble sleeping and excessive worry.

As noted above, following his discharge from the Marines Corps the Veteran enlisted in the Navy. His March 2008 entrance examination and Report of Medical History are both silent for sleep abnormalities. While serving in the Naval Reserve he was placed on active duty and deployed to Kuwait from July 2009 to April 2010. Prior to his deployment an April 2009 Pre-deployment Health Assessment revealed no issues related to a sleep disorder, to include denying frequent trouble sleeping. During his deployment there was no complaint, treatment or diagnosis related to a sleep apnea. Following the deployment a February 2010 Post-deployment Health Assessment was once again silent for sleep abnormalities. He marked a bubble corresponding to the statement that his health was somewhat better now than before he was deployed. He denied problems sleeping or still feeling tired after sleeping.

After his active duty service in the Navy, in December 2011, a Post-deployment Health Re-Assessment, revealed the first indication of potential sleep abnormalities. On the follow-up assessment the Veteran reported that since his return from theater his health was much worse than before deployment. Specifically, he annotated problems sleeping or still feeling tired after sleeping in conjunction with anxiety. The Board notes a May 2012 RO Rating decision granted service-connection for generalized anxiety disorder and panic disorder with agoraphobia.

Although the evidence of record shows the Veteran sought treatment for mental health following his deployment, this was not during a period of active service. 

As noted above, the reports of medical examination and history from the Veteran’s two periods of active duty service do not reveal findings, complaints, or treatment for a sleep disorder, to include sleep apnea. Based on such probative and competent evidence, to include the contemporaneous examination and history reports, the Board finds the evidence does not support a finding of an in-service incurrence.

Additionally, there was no treatment sought related to his sleep condition until 2016. In January 2016, VA treatment records reveal a consultation for sleep disorders. The Veteran reported that he went to bed nightly between 10 to 11pm and described waking up approximately 30 minutes later on a nightly basis. Each morning, he woke at approximately 7am to drive his kids to school then he would return to bed for an additional four more hours of sleep. Despite the additional rest he still reported being tired during the day. He denied having sleep apnea or choking/gasping during the night. Furthermore, he asserted that his sleep symptoms began years ago, but did not relate them to his active service. 

The Board finds such evidence also weighs against the claim. Then, 

a VA treatment record indicates a diagnosis of sleep in 2015 and a sleep study confirmed the diagnosis in February 2016.

The Board also finds that the third element of a service connection claim, a nexus, has not been met. The competent medical evidence of record does not show a causal relationship between the Veteran’s current sleep apnea symptoms and his active military service. Nor does the record contain a competent evidence indicating a causal relationship between his current symptomatology and his active service or to his service-connected psychiatric disability. 

While the Veteran believes his sleep, apnea is related to his deployment to Kuwait or to his service-connected psychiatric disability, he is not competent to provide a nexus opinion in this case. This issue is medically complex, as it requires knowledge of the interpretation of complicated diagnostic medical testing in the area of respiratory system and its overlapping with the field of somnology. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). The Veteran does not state, and the record does not reflect, that he has any medical education, experience, or training, nor has he offered any basis in common lay knowledge to support his opinion. As such, the Veteran is not competent to provide a nexus and the Board places no weight on the Veteran’s statements regarding etiology. Furthermore, the contemporaneous medical records show that when he first attended the consultation for his sleep study in January 2016, his main concern was snoring keeping him awake and he did not assert that his sleep apnea condition was related to his active military service.

In sum, the Veteran has a current sleep apnea disorder, however there is not a nexus between the current disability and military service. The preponderance of the evidence weighs against a finding for service connection for the sleep apnea. The benefit-of-the-doubt rule has been considered but the weight of the evidence is against the claim. 38 C.FR. § 3.102.

 

Paul Sorisio

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A. M. Williams, Associate Counsel